## Country Home Light and Power Company v. J. J. Fitzgerald Company.

(Decided March 25, 1927.)

### Appeal from Fayette Circuit Court.

1. Contracts.—Appointing exclusive agent for whole state subsequent to appointment of another as exclusive agent for a portion thereof constituted a breach of the first exclusive agency contract.

2. Principal and Agent.—Where, under contract for selling agency, principal required agent to send a man to the factory to fit him for field work, the expense incurred in sending such man as required by contract is recoverable on subsequent breach of contract by principal, precluding agent from reaping any benefit from expense thus incurred.

3. Principal and Agent.—Where contract granting exclusive agency for sale of lighting plants was breached by principal by appointment of another agent, recovery cannot be had for loss on resale of lighting plants purchased by agent, in absence of evidence showing that loss was occasioned by breach of exclusive agency contract, and that such breach necessitated resale of lighting plants at a loss.

4. Bills and Notes.—Purchaser of note after maturity took it subject to defenses against it in hands of payee.

5. Bills and Notes.—Damages for breach of exclusive agency contract which would have been proper offsets to action on note by principal are proper offsets to suit when brought by purchaser after maturity.

6. Bills and Notes.—Where, pursuant to contract for selling agency, agent executed note to principal for a portion of purchase price

of lighting plants covered by contract, the agency contract was not a collateral matter to the note, and purchaser after maturity took note subject to defense arising on breach of contract by principal.

7. Appeal and Error.—Where common-law action has been treated throughout by parties and lower court as an equity action, it will be so treated by Court of Appeals.

R. W. KEENON and J. H. POLSGROVE for appellant.

FRANK S. GINOCCHIO and SAMUEL S. YANTIS for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The appellees have for a number of years been engaged in the plumbing business in Lexington, Ky. On July 20, 1920, the Phelps Light & Power Company, a corporation of Rock Island, Ill., engaged in the manufacture of electric lighting plants for rural homes, entered into a contract with the appellee J. J. Fitzgerald through its agent, F. J. Kokosky, whereby it constituted and appointed Fitzgerald its agent, for the purpose of selling its lighting plants in some 30 counties of the state of Kentucky. The parties agree that this was an exclusive agency. The contract is an elaborate one and by its terms was to run for a period of one year unless sooner terminated according to its provisions. As a part of the consideration for constituting Fitzgerald its agent, the Phelps Light & Power Company required him to buy from it ten of its lighting plants and certain repair parts. The evidence satisfactorily shows that immediately on the execution of this contract Fitzgerald performed those things required to be done by him under it, such as the sending of a man to the factory of the Phelps concern for the purpose of informing himself about these lighting plants, the appointment of agents, and other matters. The ten lighting plants, which Fitzgerald was compelled to buy as a part of the transaction which constituted him the agent of the Phelps Company, arrived in Lexington in October following. They were shipped on a sight draft with bill of lading attached. The purchase price of these lighting plants was in excess of $4,000.00. Fitzgerald did not have all the money on hand with which to pay the draft and take up the bill of lading. Kokosky was at this time in Louisville. On telephone call from Fitzgerald, he went to Lexington and there arranged

for Fitzgerald to take up the sight draft by executing a note payable to the Phelps Company in the sum of $1,166.67, the balance being paid by Fitzgerald in cash.

· In the previous September, the Phelps Company through Kokosky had entered into a contract with P. A. Vogel & Sons Company, a large plumbing concern of Louisville, Ky. This contract, with the exception of the territory covered, was identical in its terms with the one it had entered into with Fitzgerald. By it, the Phelps Company appointed the Vogel Company its exclusive agent for a period of two years from the date of the contract in the whole state of Kentucky, Tennessee, and certain counties in Indiana. In the Fitzgerald agency contract Fitzgerald was to be compensated with a commission of 33 1-3 per cent. of the sale price of the plants. In the Vogel contract, the Vogel Company, was to be compensated with a commission of 41 per cent. The Vogel Company, too, was required to purchase a number of lighting plants as a part of the consideration for its appointment as agent. In the early part of November the Vogel Company wrote Fitzgerald informing him of its appointment as agent for Kentucky and telling him that all further lighting plants he should need should be ordered through it. Fitzgerald, on learning of Vogel's contract, at once offered to return to the Vogel Company the ten lighting plants which he had theretofore bought. The Vogel Company declined to receive them. Shortly thereafter Fitzgerald's note fell due. When it was presented for payment, Fitzgerald declined to pay it on the ground that his contract for an exclusive agency in the 30 counties named had been breached by the Phelps Company by its appointment of the Vogel Company as exclusive agent for the entire state of Kentucky. Fitzgerald about this time wrote to the attorneys representing the Phelps Company that if it would return to him the money he had paid in cash on the lighting plants and repair parts, he would return these plants and parts to the Phelps Company. The Phelps Company ignored this offer, and Fitzgerald thereafter sold the lighting plants and repair parts for what he could get for them. He realized only $1,800.00. Long after the maturity of the note, the Phelps Company, in the settlement of certain financial differences which it had with the appellant herein, transferred this note to the appellant. The latter undertook to collect this note without suit. Being unsuccessful, it finally brought this action to enforce the

note. / The appellees, admitting the execution of the note, defended on the ground that by appointing the Vogel Company its agent as stated the Phelps Company had breached its contract with Fitzgerald, and that Kokosky knowing of this breach at the time he obtained the note, and concealing such breach from the appellees, procured the note by fraud. Appellees in their answer then claimed that by reason of this fraud and breach of contract they had been damaged in the expense they had gone to in sending a man to the factory of the Phelps Company for the purpose of instruction, and in the expense they had incurred in sending this man out for the purpose of appointing agents in the territory assigned Fitzgerald. These two items amounted to $600.00. Appellees also claimed that they had been damaged in what they had paid in cash for the ten machines and repair parts and the freight thereon, less what they had been able to sell these machines for. Their total damages as alleged being $2,064.50, they asked that this sum be equitably set off against the claim herein sued on. The appellees also relied on the failure of the Phelps Company to file the statement required by section 571 of the Statutes, which defense was met by the plea that this transaction was interstate commerce. We may at once dismiss this phase of the case as no longer important under the opinion of this court in Williams v. Dearborn Truck Co., 291 S. W. 388, 218 Ky. 271. For some reason not apparent in this record, this case was referred without objection to the master commissioner, although it appears to be a common-law action. Proof was taken by depositions, and the commissioner made a report as in an equity case. This report was confirmed by the court. Pursuant to its recommendation, the appellant's petition was dismissed, and it has appealed.

There can be no doubt but that by the appointment of Vogel & Co. as its exclusive agent in Kentucky, the Phelps Company breached its prior contract with Fitzgerald. Although the Vogel Company's representative did testify that it would have been glad to let Fitzgerald handle the territory assigned him in his contract, getting its profit by the difference between the commissions allowed it and Fitzgerald, yet he further said that the Vogel Company claimed the right under its contract to sell anywhere in the territory allotted it by that contract. The Phelps people had sold a number of lighting plants to the Vogel Company. It had given the Vogel Com-

pany authority to sell these plants in the same territory it had allotted to Fitzgerald.   Plainly this was a breach of the exclusive agency contract it had made with Fitzgerald.   See Elkhorn Consol. Coal & Coke Co. v. Eaton, Rhodes & Co., 163 Ky. 306, 173 S. W. 798; 2 C. J. 777, 778.

The Phelps Company having breached its contract, what were Fitzgerald's rights?   Whether or not he could have elected to rescind the contract and have recovered back the cash he had paid and the note he had executed on a proper tender by him of the machine and repair parts he had received under the contract, we need not determine, for the answer is not pitched on the theory of rescission.   On the contrary, the answer seeks to have equitably set off the damages which the appellees claimed to have sustained by reason of the breach of contract by the Phelps Company and the claimed fraud on Kokosky's part.   The question then to be determined is how far the items claimed as damages are properly such. That the appellees are entitled to be reimbursed for the expenses they claim in fitting themselves to go forward with their agency contract is clear.   The contract itself required that the appellees send a man to the Phelps factory to fit him for field work, and it also required that appellees send this man out over the territory assigned them.   By reason of the breach of the contract by the Phelps people, the appellees were never able to reap any benefit from the expense thus incurred.   It was all a dead loss upon them.   The Phelps Company required by the contract that this expense be incurred.   By its breach of the contract, it put this dead loss on the appellees.   It should repay the appellees for such loss.   The authorities sustaining this position may be found collected in 32 A. L. R. 238 et seq.   These expenses amount to $600.00.

The other item of damages claimed is the loss on the resale of the lighting plants and repair parts.   There is no evidence to show that the loss on the resale of the lighting plants was occasioned by the breach of the exclusive agency contract.   On the other hand, the proof satisfactorily shows that these lighting plants were unknown and hard to sell, and that the appellees to get rid of them sold them at a loss.   There is no proof that appellees could have sold these plants to any better advantage had they never been disturbed in their exclusive agency; no proof that any competition from the Vogel

Company necessitated the resale of these lighting plants at a loss. Hence the trial court improperly allowed this item as an equitable set-off. It results therefore that the appellees showed but $600.00 damages properly chargeable to the Phelps Company.

As the appellant took the note sued on herein after maturity, it took it subject to the defenses against it in the hands of the Phelps Company. Although the appellees sought no judgment against the appellant, to the extent that their damages would have been proper offsets had the Phelps Company sued on this note, they are equally as proper offsets to the suit when brought by this appellant. Sparr v. Fulton National Bank, 179 Ky. 755, 201 S. W. 310.

The appellant, citing 3 R. C. L. 1046, contends however, that it took this note subject only to such defenses as attach to the note itself, and not to any claims arising out of collateral matters or independent transactions. It argues that the agency contract was a collateral matter to this note. In this the appellant is in error. A part of the consideration for the agency contract was the purchase by Fitzgerald of ten lighting plants to pay in part for which the note in question was given. The agency contract was not a collateral matter to the note. They were directly connected one with the other. Hence the appellant took this note subject to the defense here set up. See Fayette National Bank v. Meyers, 211 Ky. 185, 277 S. W. 292; Davidson v. First National Bank of Georgetown, 213 Ky. 417, 281 S. W. 152.

Although, as stated, this was a common-law action, it has been treated throughout by the parties and the lower court as an equity action. It will then be so treated by us. C. & O. v. Johnson, 291 S. W. 744, 218 Ky. 550. As we have seen, the appellees are entitled to offset against the note herein sued on only the sum of $600.00. The judgment of the lower court is therefore reversed, with instructions to enter a judgment in favor of the appellant in the sum of $1,166.67, with interest at the rate of 6 per cent. per annum from October 13, 1920, subject to a credit in the sum of $600.00, with interest thereon at the rate of 6 per cent. per annum from November 1, 1920.